THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CV-118

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CONSENT DECREE |
| v. ) | |
| ) | |
| STATE OF NORTH CAROLINA; ) | |
| NORTH CAROLINA STATE ) | |
| BOARD OF ELECTIONS; and ) | |
| GARY O. BARTLETT, Executive Director, ) | |
| North Carolina State Board of Elections, ) | |
| ) | |
| Defendants. ) | |

## CONSENT DECREE

Plaintiff United States of America ("United States") initiated this action to enforce the requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§ 1973ff *et seq.*, against Defendants State of North Carolina and the North Carolina State Board of Elections (collectively, "Defendants"). The United States' complaint alleges violations of UOCAVA arising from the Defendants' failure to provide uniformed services voters and overseas voters with sufficient opportunity to participate in any second primary in which candidates are running for federal office. In particular, the State's election laws only permit 28 days between a primary and any second primary, which is not sufficient to allow UOCAVA voters an opportunity to receive, review, and cast a ballot by mail, and have that ballot timely received by an elections official in order to be counted in a second primary for federal office.

The parties recognize that North Carolina's law currently extends the opportunity to vote by facsimile, to submit applications to vote absentee before the first date county boards of elections otherwise accept such applications, to submit applications to vote absentee by facsimile or by electronic mail, and the opportunity to vote by absentee ballot to those individuals listed in N.C. Gen. Stat. § 163-245(b) including "[i]ndividuals serving in the armed forces of the United States, including, but not limited to, the army, the navy, the air force, the marine corps, the coast guard, the Merchant Marine, the National Oceanic and Atmospheric Administration, the commissioned corps of the Public Health Service, and members of the national guard and military reserve," "[s]pouses of persons serving in the armed forces of the United States residing outside the counties of their spouses' voting residence," "[d]isabled war veterans in United States government hospitals," "[c]ivilians attached to and serving outside the United States with the armed forces of the United States," and "[m]embers of the Peace Corps." *See also* N.C. Gen. Stat. §§ 163-246 & -247 and 8 N.C. Admin. Code 12.0101 - .0111. The parties agree that these North Carolina statutes currently apply to certain "absent uniformed services" voters as defined in UOCAVA and other members of the armed services. North Carolina's statutes do not apply to "a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States," or "a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States." 42 U.S.C. § 1973ff-6 (5)(B) & (C). North Carolina's statutes implementing UOCAVA also do not apply to dependents, other than spouses of an absent uniformed services voter, "who, by reason of the active duty or service of the member, is absent from the place of residence where . . . the dependent is otherwise qualified

2

to vote." 42 U.S.C. § 1973 ff-6(1)(C).

The United States and Defendants, through their respective counsel, have conferred and agree that this action should be settled without the delay and expense of litigation. The parties negotiated in good faith and hereby agree to the entry of this Consent Decree as an appropriate resolution of the claims alleged in the United States' complaint. Accordingly, the United States and Defendants stipulate to the facts and consent decree set forth below:

1. This action is brought by the Attorney General on behalf of the United States pursuant to UOCAVA, which provides, *inter alia*, that absent uniformed services voters and overseas voters ("UOCAVA voters") shall be permitted "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1973ff-1(a)(1). This action is brought to ensure that UOCAVA voters, who are otherwise qualified to vote in North Carolina's second primaries for federal offices, will have an opportunity to vote in those primaries and have their ballots counted. The United States seeks relief for any May 30, 2006 second primary, and permanent relief to ensure future compliance with UOCAVA.

2. This Court has jurisdiction pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. § 1345.

3. Under 42 U.S.C. § 1973ff-1, Defendant State of North Carolina is charged with the responsibility of assuring that State election laws, as applied, comply with the provisions of UOCAVA.

4. Defendant North Carolina State Board of Elections is generally responsible for administering primary and general elections under State law, certifying primary results prior to

3

any second primary, and creating ballots, including absentee ballots, for all elections. *See* N.C. Gen. Stat. §§ 163-22, 163-111(c), 163-165.3. Defendant Gary O. Bartlett is the Executive Director of the North Carolina State Board of Elections and is being sued in his official capacity.

5.  On May 2, 2006, North Carolina voters will select or participate in the selection of their respective parties' candidates in five contested primaries for seats in the United States House of Representatives. A second primary will be held in a congressional district on May 30, 2006, if necessary, if no candidate receives a substantial plurality of the votes and the candidate with the second highest vote total in a race requests a second primary. N.C. Gen. Stat. § 163-111(a)-(c). A "substantial plurality" is defined as receiving 40% of the votes cast in an election. N.C. Gen. Stat. § 163-111(b).

6.  County election officials of North Carolina have received timely requests for absentee ballots from voters who are entitled to vote pursuant to the provisions of UOCAVA.

7.  Under North Carolina law, only those absentee ballots received by 5:00 p.m. on the day before the election can be counted. N.C. Gen. Stat. §§ 163-231(b) & 163-255. In 2006, each County Board of Elections will meet to canvass the votes and authenticate the results within seven (7) days of the May 2, 2006 primary. N.C. Gen. Stat. § 163-182.5. Any candidate who requests a second primary must do so by noon on the ninth day after the primary. N.C. Gen. Stat. § 163-111(c)(1). The State Board of Elections must certify the May 2, 2006 primary results and the need for a second primary. *Id.*

8.  In order to allow UOCAVA voters a fair opportunity to vote by absentee ballot, election officials in North Carolina must send the ballots to the voters sufficiently in advance of

4

the election so that voters can receive, cast and return their absentee ballots by the deadline established under North Carolina law. Some UOCAVA voters are unable to request or cast absentee ballots by facsimile.

9. Based on data from the United States Postal Service and the Military Postal Service Agency, the Federal Voting Assistance Program ("FVAP") of the Department of Defense and the United States Election Assistance Commission recommend that States allow 45 days for the round trip transit of an overseas ballot. At a minimum, FVAP has determined that States must provide no fewer than 30 days for the round-trip transit of a ballot to overseas locations.

10. Because of the compressed period of time between the primary and a second primary in North Carolina, absentee ballots will not be mailed sufficiently before a May 30, 2006 second primary, if one is necessary, to afford all UOCAVA voters an opportunity to vote by mail for a candidate seeking federal office. Given the time period allowed for requesting a second primary and certifying the first primary results, election officials will not be authorized to mail absentee ballots for a second primary for a federal office until at least 10 days after the first primary. This allows no more than 17 days for the round-trip transmission of ballots for those voters who vote by mail.

11. The inability of election officials in North Carolina to mail absentee ballots to UOCAVA voters sufficiently before a May 30, 2006 second primary for a federal office, should one become necessary, so as to allow the voting and return of ballots by mail by 5:00 p.m. on the day before the second primary, will deprive certain UOCAVA voters of an opportunity to vote in any such second primary in violation of UOCAVA.

5

12. This Consent Decree is final and binding as to all issues resolved herein.

WHEREFORE, the parties having freely given their consent, and the terms of the decree being fair, reasonable, and consistent with the requirements of UOCAVA, it is hereby ORDERED, ADJUDGED AND DECREED that:

1. The State Board of Elections shall order county election officials in any county where a second primary for a federal office is possible to include, in conjunction with the mailing of regular absentee ballots to UOCAVA voters for the May 2, 2006 primary, a blank state-authorized special write-in ballot to be used in the event of a second primary on May 30, 2006, along with reasonable information regarding the use of such ballot in the event of a second primary and appropriate instructions regarding where voters can obtain information about any possible second primary for a federal office. A second primary for federal office is possible when three (3) or more candidates from a single party are seeking their respective party's nomination for the general election to be held on November 7, 2006. At least three candidates have filed from a single party in only four congressional districts in North Carolina; thus, only four second primaries are mathematically possible in North Carolina in 2006;

2. In the event of a second primary for federal office, the State Board of Elections, within ten (10) days of the May 2, 2006 primary for federal office, shall: (a) publish on its website, and direct any county conducting a second primary to post on its website if the county has a website, information regarding the races for federal office for which a second primary will be necessary under State law and the names of the candidates for such a second primary; and (b) notify the FVAP, International Herald Tribune (http://www.iht.com), USA Today International

6

(http://www.usatoday.com), Military Times Media Group (cvinch@navytimes.com; cvinch@armytimes.com; cvinch@airforcetimes.com; cvinch@marinecorpstimes.com); Overseas Vote Foundation (http://www.overseasvotefoundation.org/intro/), Stars and Stripes (http://www.estripes.com), and the Associated Press, Raleigh News and Observer, Winston-Salem Journal, Charlotte Observer, Greensboro News-Record, Fayetteville Observer, and Daily News serving Jacksonville, and New Bern Sun-Journal, regarding the races for federal office for which a second primary is required and the candidates participating in those elections;

3. In the event of a second primary for federal office, the State Board of Elections shall take such steps as are necessary to require that appropriate election officials count as validly cast ballots, in contests relating to the selection of nominees for federal office, those ballots cast by UOCAVA voters, who are qualified to vote in North Carolina pursuant to UOCAVA, and who otherwise comply with State law for absentee voting, provided that the ballot is executed and sent (whether by federal postal services or commercial delivery services) or delivered in person by May 30, 2006, and is received by 5:00 p.m. on Monday, June 5, 2006. In order to be counted, the absentee ballot must be accompanied by a postmark, express mail or courier service receipt, or other indicia that it was sent by May 30, 2006. Notwithstanding the above, election results may be formally certified based on ballots received by the close of the polls in any election in which the number of outstanding absentee ballots from UOCAVA voters could not mathematically alter the outcome, subject to amendment or re-certification for any election where such ballots returned by the extended receipt deadline change the total of votes cast for any candidate;

4. In the event of a second primary for federal office, the State Board of Elections shall take such steps as are necessary to require that appropriate election officials accept for federal offices, in the May 30, 2006 second primary, the Federal Write-in Absentee Ballot ("FWAB") provided for in UOCAVA, 42 U.S.C. § 1973ff-2, provided that ballot is cast by a UOCAVA voter, executed and sent (whether by federal postal services or commercial delivery services) or delivered in person by May 30, 2006 and is received by 5:00 p.m. on Monday, June 5, 2006. In order to be counted, the FWAB ballot must be accompanied by a postmark, express mail or courier service receipt, or other indicia that it was sent by May 30, 2006;

5. In the event of a second primary for federal office, the State Board of Elections shall take such steps as are necessary to ensure that appropriate election officials will accept, for the May 30, 2006 second primary, any special write-in ballot or FWAB transmitted by facsimile or by email, so long as the scanned completed ballot is contained in the email, along with any other documents required by State law, provided that the ballot is cast by a UOCAVA voter and is received by 5:00 p.m. on May 30, 2006;

6. The State Board of Elections shall take such steps to afford UOCAVA voters eligible to participate in any May 30, 2006 second primary a reasonable opportunity to learn of this Court's order by issuing a press statement for immediate release, posted immediately on the North Carolina Board of Elections web site, and distributed to the media outlets set forth in paragraph 2, *supra*, describing this order, and providing appropriate contact information;

7. The State Board of Elections shall provide a report to the Voting Section of the Civil Rights Division of the United States Department of Justice concerning the number of

8

UOCAVA absentee ballots, including FWABs, received and counted for any May 30, 2006 second primary for federal office within 45 days of that election. This report will set forth the following information:

> (a) the number of valid absentee ballots from UOCAVA voters, by county, received and counted before the close of the polls on Tuesday, May 30, 2006;
>
> (b) the number of absentee ballots from UOCAVA voters, by county, received and counted after the close of the polls on May 30, 2006, but prior to 5:00 p.m. on June 5, 2006;
>
> (c) the number of absentee ballots from UOCAVA voters, by county, received later than 5:00 p.m. on June 5, 2006; and
>
> (d) the number of absentee ballots from UOCAVA voters, by county, that were not counted in the second primary and the reasons for the county's rejection of such ballots;

8. The State Board of Elections shall take such actions as are necessary to assure that UOCAVA voters shall have a fair and reasonable opportunity to participate in future second primaries for federal office and, at six-month intervals beginning on the date this Consent Decree is signed, shall provide a report to this Court and the Voting Section of the United States Department of Justice regarding the status of any proposed legislation or administrative actions to fully remedy the potential violations for overseas citizens and other UOCAVA voters arising from the State's second primary schedule;

9. The Court shall retain jurisdiction over this action to enter such further relief as

may be necessary for the effectuation of the terms of this Consent Decree and to enter such relief as may be necessary to abate any UOCAVA violation with respect to future second primaries for federal offices. The parties agree to seek dismissal immediately of the Consent Decree upon enactment of legislation by the North Carolina General Assembly that permanently remedies the potential UOCAVA violation described in this Consent Decree and Complaint. All reporting obligations of the State Board of Elections pursuant to this Consent Decree shall end upon the enactment of legislation by the North Carolina General Assembly that permanently remedies the potential UOCAVA violation described in this Consent Decree; and

10.    Each party shall bear its own costs with regard to actions taken by the parties up to and including the entry of this decree.

The undersigned agree to entry of this Consent Decree:

For the Plaintiff, United States of America:

FRANK D. WHITNEY
United States Attorney

ROBERT J. HIGDON, JR.
N.C. Bar No. 17229
Assistant United States Attorney
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, North Carolina 27601-1461
(919) 856-4530

JOHN K. TANNER
REBECCA J. WERTZ
M. ERIC EVERSOLE
VERONICA S. JUNG
Trial Attorneys
Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254-NWB
950 Pennsylvania Avenue, NW
Washington, DC 20530
(800) 253-3931 (telephone)

For the Defendants:

GRAYSON KELLEY
N.C. Bar No. 8349
Chief Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
gkelley@ncdoj.com

GARY O. BARTLETT
Executive Director
North Carolina State Board of Elections
6400 Mail Service Center
Raleigh, North Carolina 27699-6400
(919) 733-7173

SO ORDERED this 20th day of MARCH, 2006

United States District Judge

11