# GENERAL ASSEMBLY OF NORTH CAROLINA
## SESSION 2005

### SESSION LAW 2006-192
### HOUSE BILL 1024

AN ACT TO AUTHORIZE THE STATE BOARD OF ELECTIONS TO CONDUCT A PILOT PROGRAM IN WHICH THE INSTANT RUNOFF METHOD OF VOTING WOULD BE USED IN LOCAL ELECTIONS; TO SET THE DATE OF FUTURE SECOND PRIMARIES AT SEVEN WEEKS AFTER THE FIRST PRIMARY; TO REVISE THE MUNICIPAL ELECTION SCHEDULE TO PROVIDE MORE TIME FOR ABSENTEE VOTING AND ELECTION ADMINISTRATION; TO CONFORM NORTH CAROLINA ABSENTEE VOTING LAW TO THE U.S. UNIFORMED AND OVERSEAS CITIZENS ABSENTEE VOTING ACT; TO REVISE THE PROCEDURE FOR SELECTION OF PRECINCTS AND OTHER VOTING UNITS FOR SAMPLE COUNTS; TO PROVIDE FOR FILLING MID-ELECTION-YEAR JUDICIAL VACANCIES; AND TO FURTHER AMEND THE LAW CONCERNING JUDICIAL CANDIDACIES.

The General Assembly of North Carolina enacts:

**SECTION 1.(a)** The State Board of Elections shall select local jurisdictions in which to conduct a pilot program during the 2007 and 2008 elections for local offices using instant runoff voting. The State Board shall select:
(1) Up to 10 cities for the 2007 elections.
(2) Up to 10 counties for the 2008 elections.
In selecting those local jurisdictions, the State Board shall seek diversity of population size, regional location, and demographic composition. The pilot shall be conducted only with the concurrence of the county board of elections that conducts elections for the local jurisdiction. If a city is selected that has voters in more than one county, the concurrence of all the county boards of elections that conduct that city's elections is required. The pilot program shall consist of using instant runoff voting as the method for determining the winner or winners of a partisan primary or a nonpartisan election that normally uses nonpartisan election and runoff or nonpartisan primary and election. Instant runoff voting may also be used to determine results in an election where nonpartisan plurality elections are normally used, but only if the governing board of the local jurisdiction concurs.
As used in this section, "instant runoff voting" means a system in which voters rank up to three of the candidates by order of preference, first, second, or third. If the candidate with the most first-choice votes receives the threshold of victory of the first-choice votes, that candidate wins. If no candidate receives the threshold of victory of first-choice votes, the two candidates with the greatest number of first-choice votes advance to a second round of counting. In this round, each ballot counts as a vote for whichever of the two final candidates is ranked highest by the voter. The candidate with the most votes in the second round wins the election.
The threshold of victory of first-choice votes for a partisan primary shall be forty percent (40%) plus one vote. The threshold of victory for a nonpartisan election and runoff or nonpartisan primary and election shall be a majority of the vote. The threshold of victory in a contest that normally uses nonpartisan plurality shall be determined by the State Board with the concurrence of the county board of elections and the local governing board.

If more than one seat is to be filled in the same race, the voter votes the same way as if one seat were to be filled. The counting is the same as when one seat is to be filled, with one or two rounds as needed, except that counting is done separately for each seat to be filled. The first counting results in the first winner. Then the second count proceeds without the name of the first winner. This process results in the second winner. For each additional seat to be filled, an additional count is done without the names of the candidates who have already won.

Other details of instant runoff voting are as described in House Bill 1024 (First Edition) of the 2005 Regular Session of the General Assembly, with modifications the State Board deems necessary, in primaries and/or elections for city offices, for county offices, or for both. Those modifications may include giving the voter more than three choices in case of multi-seat contests. The State Board shall not use instant runoff voting in a primary or election for an office unless the entire electorate for the office uses the same method.

**SECTION 1.(b)** The State Board of Elections shall closely monitor the pilot program established in this section and report its findings and recommendations to the 2007 General Assembly.

**SECTION 2.** G.S. 163-111(e) reads as rewritten:

"(e) Date of Second Primary; Procedures. – If a second primary is required under the provisions of this section, the appropriate board of elections, State or county, shall order that it be held ~~four~~ seven weeks after the first primary.

There shall be no registration of voters between the dates of the first and second primaries. Persons whose qualifications to register and vote mature after the day of the first primary and before the day of the second primary may register on the day of the second primary and, when thus registered, shall be entitled to vote in the second primary. The second primary is a continuation of the first primary and any voter who files a proper and timely ~~affidavit~~ written affirmation of ~~transfer of precinct,~~ change of address within the county under the provisions of G.S. 163-82.15, ~~before~~ in the first primary may vote in the second primary without having to refile ~~the affidavit of transfer~~ that written affirmation if he is otherwise qualified to vote in the second primary. Subject to this provision for registration, the second primary shall be held under the laws, rules, and regulations provided for the first primary."

**SECTION 3.** G.S. 163-279 reads as rewritten:

"**§ 163-279. Time of municipal primaries and elections.**

(a) Primaries and elections for offices filled by election of the people in cities, towns, incorporated villages, and special districts shall be held in 1973 and every two or four years thereafter as provided by municipal charter on the following days:

    (1) If the election is nonpartisan and decided by simple plurality, the election shall be held on Tuesday after the first Monday in November.

    (2) If the election is partisan, the election shall be held on Tuesday after the first Monday in November, the first primary shall be held on the ~~sixth~~ second Tuesday ~~before the election,~~ after Labor Day, and the second primary, if required, shall be held on the ~~third~~ fourth Tuesday before the election.

    (3) If the election is nonpartisan and the nonpartisan primary method of election is used, the election shall be held on Tuesday after the first Monday in November and the nonpartisan primary shall be held on the fourth Tuesday before the election.

    (4) If the election is nonpartisan and the election and runoff election method of election is used, the election shall be held on the fourth Tuesday before the Tuesday after the first Monday in November, and the runoff election, if required, shall be held on Tuesday after the first Monday in November.

(b) Notwithstanding the provisions of subsection (a), the next regular municipal primary and election in Winston-Salem shall be held at the time of the primary and

election for county officers in 1974, officers elected at that time shall serve terms of office expiring on the first Monday in December, 1977. Beginning in 1977, municipal primaries and elections in Winston-Salem shall be held at the time provided in this section.

(c) Officers of sanitary districts elected in 1970 shall hold office until the first Monday in December, 1973, notwithstanding G.S. 130-126. Beginning in 1973, sanitary district elections shall be held at the times provided in this section or in G.S. 130A-50(b1)."

**SECTION 4.** G.S. 163-291 reads as rewritten:
"**§ 163-291. Partisan primaries and elections.**

The nomination of candidates for office in cities, towns, villages, and special districts whose elections are conducted on a partisan basis shall be governed by the provisions of this Chapter applicable to the nomination of county officers, and the terms "county board of elections," "chairman of the county board of elections," "county officers," and similar terms shall be construed with respect to municipal elections to mean the appropriate municipal officers and candidates, except that:

(1) The dates of primary and election shall be as provided in G.S. 163-279.

(2) A candidate seeking party nomination for municipal or district office shall file his notice of candidacy with the board of elections no earlier than 12:00 noon on the first Friday in July and no later than 12:00 noon on the first third Friday in August July preceding the election, except:
   a. In 2001 a candidate seeking party nomination for municipal or district office in any city which elects members of its governing board on a district basis, or requires that candidates reside in a district in order to run, shall file his notice of candidacy with the board of elections no earlier than 12:00 noon on the fourth Monday in July and no later than 12:00 noon on the second Friday in August preceding the election; and
   b. In 2002 if the election is held then under G.S. 160A-23.1, a candidate seeking party nomination for municipal or district office shall file his notice of candidacy with the board of elections at the same time as notices of candidacy for county officers are required to be filed under G.S. 163-106.

No person may file a notice of candidacy for more than one municipal office at the same election. If a person has filed a notice of candidacy for one office with the county board of elections under this section, then a notice of candidacy may not later be filed for any other municipal office for that election unless the notice of candidacy for the first office is withdrawn first.

(3) The filing fee for municipal and district primaries shall be fixed by the governing board not later than the day before candidates are permitted to begin filing notices of candidacy. There shall be a minimum filing fee of five dollars ($5.00). The governing board shall have the authority to set the filing fee at not less than five dollars ($5.00) nor more than one percent (1%) of the annual salary of the office sought unless one percent (1%) of the annual salary of the office sought is less than five dollars ($5.00), in which case the minimum filing fee of five dollars ($5.00) will be charged. The fee shall be paid to the board of elections at the time notice of candidacy is filed.

(4) The municipal ballot may not be combined with any other ballot.

(5) The canvass of the primary and second primary shall be held on the seventh day following the primary or second primary. In accepting the filing of complaints concerning the conduct of an election, a board of

elections shall be subject to the rules concerning Sundays and holidays set forth in G.S. 103-5.
(6) Candidates having the right to demand a second primary shall do so not later than 12:00 noon on the Thursday following the canvass of the first primary."
**SECTION 5.** G.S. 163-294.2 reads as rewritten:
"**§ 163-294.2. Notice of candidacy and filing fee in nonpartisan municipal elections.**
(a) Each person offering himself as a candidate for election to any municipal office in municipalities whose elections are nonpartisan shall do so by filing a notice of candidacy with the board of elections in the following form, inserting the words in parentheses when appropriate:

"Date _____;
I hereby file notice that I am a candidate for election to the office of _____(at large) (for the _____ Ward) in the regular municipal election to be held in_____ on _____, _____
(municipality)
Signed _____
(Name of Candidate)
Witness:_____
**FOR THE BOARD OF ELECTIONS**"

The notice of candidacy shall be either signed in the presence of the chairman or secretary of the board of elections or the director of elections of that county, or signed and acknowledged before an officer authorized to take acknowledgments who shall certify the notice under seal. An acknowledged and certified notice may be mailed to the board of elections. The candidate shall sign the notice of candidacy with his legal name and, in his discretion, any nickname by which he is commonly known, in the form that he wishes it to appear upon the ballot but substantially as follows: "Richard D. (Dick) Roc." A candidate may also, in lieu of his legal first name and legal middle initial or middle name (if any) sign his nickname, provided that he appends to the notice of candidacy an affidavit that he has been commonly known by that nickname for at least five years prior to the date of making the affidavit, and notwithstanding the previous sentence, if the candidate has used his nickname in lieu of first and middle names as permitted by this sentence, unless another candidate for the same office who files a notice of candidacy has the same last name, the nickname shall be printed on the ballot immediately before the candidate's surname but shall not be enclosed by parentheses. If another candidate for the same office who filed a notice of candidacy has the same last name, then the candidate's name shall be printed on the ballot in accordance with the next sentence of this subsection. The candidate shall also include with the affidavit the way his name (as permitted by law) should be listed on the ballot if another candidate with the same last name files a notice of candidacy for that office.
(b) Only persons who are registered to vote in the municipality shall be permitted to file notice of candidacy for election to municipal office. The board of elections shall inspect the voter registration lists immediately upon receipt of the notice of candidacy and shall cancel the notice of candidacy of any candidate who is not eligible to vote in the election. The board shall give notice of cancellation to any candidate whose notice of candidacy has been cancelled under this subsection by mail or by having the notice served on him by the county sheriff.
(c) Candidates seeking municipal office shall file their notices of candidacy with the board of elections no earlier than 12:00 noon on the first Friday in July and no later than 12:00 noon on the ~~first~~ third Friday in ~~August~~ July preceding the election, except:
(1) In 2001 candidates seeking municipal office in any city which elects members of its governing board on a district basis, or requires that candidates reside in a district in order to run, shall file their notices of candidacy with the board of elections no earlier than 12:00 noon on the

fourth Monday in July and no later than 12:00 noon on the second Friday in August preceding the election; and
(2) In 2002 if the election is held then under G.S. 160A-23.1, candidates seeking municipal office shall file their notices of candidacy with the board of elections at the same time as notices of candidacy for county officers are required to be filed under G.S. 163-106.

Notices of candidacy which are mailed must be received by the board of elections before the filing deadline regardless of the time they were deposited in the mails.

(d) Any person may withdraw his notice of candidacy at any time prior to the filing deadline prescribed in subsection (c), and shall be entitled to a refund of his filing fee if he does so.

(e) The filing fee for the primary or election shall be fixed by the governing board not later than the day before candidates are permitted to begin filing notices of candidacy. There shall be a minimum filing fee of five dollars ($5.00). The governing board shall have the authority to set the filing fee at not less than five dollars ($5.00) nor more than one percent (1%) of the annual salary of the office sought unless one percent (1%) of the annual salary of the office sought is less than five dollars ($5.00), in which case the minimum filing fee of five dollars ($5.00) will be charged. The fee shall be paid to the board of elections at the time notice of candidacy is filed.

(f) No person may file a notice of candidacy for more than one municipal office at the same election. If a person has filed a notice of candidacy for one office with the board of elections under this section, then a notice of candidacy may not later be filed for any other municipal office for the election unless the notice of candidacy for the first office is withdrawn first."

**SECTION 6.** G.S. 163-245 reads as rewritten:
"**§ 163-245. Persons in armed forces, their spouses, certain veterans, civilians working with armed forces, and members of Peace Corps may register and vote by mail.**

(a) Any individual who is eligible to register and who is qualified to vote in any statewide primary or election held under the laws of this State, and who is absent from the county of his residence in any of the capacities specified in subsection (b) of this section, shall be entitled to register by mail ~~and~~ or to vote by ~~military~~ absentee ballot or both in the manner provided in this Article.

(b) The provisions of this Article shall apply to the following persons:
(1) Individuals serving in the armed forces of the United States, including, but not limited to, the army, the navy, the air force, the marine corps, the coast guard, the Merchant Marine, the National Oceanic and Atmospheric Administration, the commissioned corps of the Public Health Service, and members of the national guard and military reserve.
(2) Spouses of persons serving in the armed forces of the United States residing outside the counties of their spouses' voting residence.
(3) Disabled war veterans in United States government hospitals.
(4) Civilians attached to and serving outside the United States with the armed forces of the United States.
(5) Members of the Peace Corps.
(6) Other individuals meeting the definitions of "absent uniformed services voter" and "overseas voter" in the federal Uniformed and Overseas Citizens Absentee Voting Act.

(c) An otherwise valid voter registration or absentee ballot application submitted by an absent uniformed services voter during a year shall not be refused or prohibited on the grounds that the voter submitted the application before the first date on which the county board of elections otherwise accepts those applications submitted by absentee voters who are not members of the uniformed services for that year.

(d) If any absent uniformed services or overseas voter submits a voter registration application or absentee ballot request, and the request is rejected, the board of elections that makes the rejection shall notify the voter of the reasons for the rejection.

(e) The requirement for any oath or affirmation to accompany any document as to voter registration or absentee ballots under this Article may be met by use of the standard oath prescribed by the Presidential designee under section 101(b)(7) of the Uniformed and Overseas Citizens Absentee Voting Act."

**SECTION 7.(a)** G.S. 163-182.1(b) reads as rewritten:

"(b) Procedures and Standards. – The State Board of Elections shall adopt uniform and nondiscriminatory procedures and standards for voting systems. The standards shall define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State. The State Board shall adopt those procedures and standards at a meeting occurring not earlier than 15 days after the State Board gives notice of the meeting. The procedures and standards adopted shall apply to all elections occurring in the State and shall be subject to amendment or repeal by the State Board acting at any meeting where notice that the action has been proposed has been given at least 15 days before the meeting. These procedures and standards shall not be considered to be rules subject to Article 2A of Chapter 150B of the General Statutes. However, the State Board shall publish in the North Carolina Register the procedures and standards and any changes to them after adoption, with that publication noted as information helpful to the public under G.S. 150B-21.17(a)(6). Copies of those procedures and standards shall be made available to the public upon request or otherwise by the State Board. For optical scan and direct record electronic voting systems, and for any other voting systems in which ballots are counted other than on paper by hand and eye, those procedures and standards shall do both of the following:

    (1) Provide for a sample hand-to-eye count of the paper ballots or paper records of a statewide ballot item in every county. The presidential ballot item shall be the subject of the sampling in a presidential election. If there is no statewide ballot item, the State Board shall provide a process for selecting district or local ballot items to adequately sample the electorate. <u>The State Board shall approve in an open meeting the procedure for randomly selecting the sample precincts for each election. The random selection of precincts for any county shall be done publicly after the initial count of election returns for that county is publicly released or 24 hours after the polls close on election day, whichever is earlier.</u> The sample chosen by the State Board shall be of full precincts, full counts of absentee ballots, and full counts of one-stop early voting sites. The size of the sample of each category shall be chosen to produce a statistically significant result and shall be chosen after consultation with a statistician. The actual units shall be chosen at random. In the event of a material discrepancy between the electronic or mechanical count and a hand-to-eye count, the hand-to-eye count shall control, except where paper ballots or records have been lost or destroyed or where there is another reasonable basis to conclude that the hand-to-eye count is not the true count. If the discrepancy between the hand-to-eye count and the mechanical or electronic count is significant, a complete hand-to-eye count shall be conducted.

    (2) Provide that if the voter selects votes for more than the number of candidates to be elected or proposals to be approved in a ballot item, the voting system shall do all the following:
        a. Notify the voter that the voter has selected more than the correct number of candidates or proposals in the ballot item.

b. Notify the voter before the vote is accepted and counted of the effect of casting overvotes in the ballot item.
c. Provide the voter with the opportunity to correct the official ballot before it is accepted and counted."

**SECTION 7.(b)** G.S. 163-182.2(b) reads as rewritten:

"(b) The State Board of Elections shall promulgate rules for the initial counting of official ballots. All election officials shall be governed by those rules. In promulgating those rules, the State Board shall adhere to the following guidelines:

(1) For each voting system used, the rules shall specify the role of precinct officials and of the county board of elections in the initial counting of official ballots.

(1a) For optical scan and direct record electronic voting systems, and for any other voting systems in which ballots are counted other than on paper by hand and eye, those rules shall provide for a sample hand-to-eye count of the paper ballots or paper records of a sampling of a statewide ballot item in every county. The presidential ballot item shall be the subject of the sampling in a presidential election. If there is no statewide ballot item, the State Board shall provide a process for selecting district or local ballot items to adequately sample the electorate. <u>The State Board shall approve in an open meeting the procedure for randomly selecting the sample precincts for each election. The random selection of precincts for any county shall be done publicly after the initial count of election returns for that county is publicly released or 24 hours after the polls close on election day, whichever is earlier.</u> The sample chosen by the State Board shall be of full precincts, full counts of absentee ballots, and full counts of one-stop early voting sites. The size of the sample of each category shall be chosen to produce a statistically significant result and shall be chosen after consultation with a statistician. The actual units shall be chosen at random. In the event of a material discrepancy between the electronic or mechanical count and a hand-to-eye count, the hand-to-eye count shall control, except where paper ballots or records have been lost or destroyed or where there is another reasonable basis to conclude that the hand-to-eye count is not the true count. If the discrepancy between the hand-to-eye count and the mechanical or electronic count is significant, a complete hand-to-eye count shall be conducted.

(2) The rules shall provide for accurate unofficial reporting of the results from the precinct to the county board of elections with reasonable speed on the night of the election.

(3) The rules shall provide for the prompt and secure transmission of official ballots from the voting place to the county board of elections.

The State Board shall direct the county boards of elections in the application of the principles and rules in individual circumstances."

**SECTION 8.(a)** G.S. 163-329 reads as rewritten:

"**§ 163-329. Elections to fill vacancy <u>in office</u> created after primary filing ~~period to use plurality method.~~ <u>period opens.</u>**

(a) General. – If a vacancy is created in the office of justice of the Supreme Court, judge of the Court of Appeals, or judge of superior court after the filing period for the primary opens but more than 60 days before the general election, and under the Constitution of North Carolina an election is to be held for that position, such that the office shall be filled in the general election as provided in G.S. 163-9, the election to fill the office for the remainder of the term shall be conducted without a primary using the ~~plurality~~ method ~~as~~ provided in subsection ~~(b)~~<u>(b1)</u> of this section. If a vacancy is created in the office of justice of the Supreme Court, judge of the Court of Appeals, or judge of

superior court before the filing period for the primary opens, and under the Constitution of North Carolina an election is to be held for that position, such that the office shall be filled in the general election as provided in G.S. 163-9, the election to fill the office for the remainder of the term shall be conducted in accordance with G.S. 163-322.

~~(b) Plurality Election Rules. – Elections under this section shall be conducted using the following rules:~~

    ~~(1) The filing period shall be prescribed by the State Board of Elections, but in no event may it be less than five working days. If a vacancy occurs in a second office in the same superior court district after the first filing period established under the section has closed, the State Board of Elections shall reopen filing for a period of not less than five working days for the office of justice of the Supreme Court, judge of the Court of Appeals, or superior court judge. All persons filing in either filing period shall run as a group and the election results shall be determined by subdivision (3) of this subsection.~~

    ~~(2) When more than one person is seeking election to a single office, the candidate who receives the highest number of votes shall be declared elected.~~

    ~~(3) When more persons are seeking election to two or more offices (constituting a group) than there are offices to be filled, those candidates receiving the highest number of votes, equal in number to the number of offices to be filled, shall be declared elected.~~

    ~~(4) If two or more candidates receiving the highest number of votes each receive the same number of votes, the board of elections shall resolve the tie in accordance with G.S. 163-182.8.~~

    ~~(5) Except as provided in this section, the provisions of this Article apply to elections conducted under this section.~~

<u>(b1) Method for Vacancy Election. – If a vacancy for the office of justice of the Supreme Court, judge of the Court of Appeals, or judge of the superior court occurs more than 60 days before the general election and after the opening of the filing period for the primary, then the State Board of Elections shall designate a special filing period of one week for candidates for the office. If more than two candidates file and qualify for the office in accordance with G.S. 163-323, then the Board shall conduct the election for the office as follows:</u>

    <u>(1) When the vacancy described in this section occurs more than 63 days before the date of the second primary for members of the General Assembly, a special primary shall be held on the same day as the second primary. The two candidates with the most votes in the special primary shall have their names placed on the ballot for the general election held on the same day as the general election for members of the General Assembly.</u>

    <u>(2) When the vacancy described in this section occurs less than 64 days before the date of the second primary, a general election for all the candidates shall be held on the same day as the general election for members of the General Assembly and the 'instant runoff voting' method shall be used to determine the winner. Under 'instant runoff voting,' voters rank up to three of the candidates by order of preference, first, second, or third. If the candidate with the greatest number of first-choice votes receives more than fifty percent (50%) of the first-choice votes, that candidate wins. If no candidate receives that minimum number, the two candidates with the greatest number of first-choice votes advance to a second round of counting. In this round, each ballot counts as a vote for whichever of the two final candidates is ranked highest by the voter. The candidate with the most votes in the second round wins the election. If more than one seat is to be filled in</u>

the same race, the voter votes the same way as if one seat were to be filled. The counting is the same as when one seat is to be filled, with one or two rounds as needed, except that counting is done separately for each seat to be filled. The first count results in the first winner. Then the second count proceeds without the name of the first winner. This process results in the second winner. For each additional seat to be filled, an additional count is done without the names of the candidates who have already won. In multi-seat contests, the State Board of Elections may give the voter more than three choices.
 (3) If two or more candidates receiving the highest number of votes each receive the same number of votes, the board of elections shall resolve the tie in accordance with G.S. 163-182.8.
 (c) Applicable Provisions. – Except as provided in this section, the provisions of this Article apply to elections conducted under this section.
 (d) Rules. – The State Board of Elections shall adopt rules for the implementation of this section. The rules are not subject to Article 2A of Chapter 150B of the General Statutes. The rules shall include the following:
  (1) If after the first-choice candidate is eliminated, a ballot does not indicate one of the uneliminated candidates as an alternative choice, the ballot is exhausted and shall not be counted after the initial round.
  (2) The fact that the voter does not designate a second or third choice does not invalidate the voter's higher choice or choices.
  (3) The fact that the voter gives more than one ranking to the same candidate shall not invalidate the vote. The highest ranking given a particular candidate shall count as long as the candidate is not eliminated.
  (4) In case of a tie between candidates such that two or more candidates have an equal number of first choices and more than two candidates qualify for the second round, instant runoff voting shall be used to determine which two candidates shall advance to the second round."

**SECTION 8.(b)** G.S. 163-327.1 reads as rewritten:

"**§ 163-327.1. Rules when vacancies for superior court judge are to be voted on.**

If a vacancy occurs in a judicial district for any offices of superior court judge, and on account of the occurrence of such vacancy, there is to be an election for one or more terms in that district to fill the vacancy or vacancies, at that same election in accordance with G.S. 163-9 and Article IV, Section 19 of the North Carolina Constitution, the nomination and election shall be determined by the following special rules in addition to any other provisions of law:
 (1) If the vacancy occurs prior to the opening of the filing period under G.S. 163-323(b), nominations shall be made by primary election as provided by this Article, without designation as to the vacancy.
 (2) If the vacancy occurs beginning on opening of the filing period under G.S. 163-323(b), and ending on the sixtieth day before the general election, candidate filing shall be as provided by G.S. 163-329 without designation as to the vacancy.
 (3) The general election ballot shall contain, without designation as to vacancy, spaces for the election to fill the vacancy where nominations were made or candidates filed under subdivision (1) or (2) of this section. ~~The~~ **Except as provided in G.S. 163-329, the** persons receiving the highest numbers of votes equal to the term or terms to be filled shall be elected to the term or terms. "

**SECTION 9.(a)** G.S. 163-327 is repealed.
**SECTION 9.(b)** G.S. 163-328 reads as rewritten:
"**§ 163-328. Failure of candidates to file; death or other disqualification of a ~~candidate before election.~~ candidate; no withdrawal from candidacy.**

(a) Insufficient Number of Candidates. – If when the filing period expires, candidates have not filed for an office to be filled under this Article, the State Board of Elections shall extend the filing period for five days for any such offices.

(a1) Death or Disqualification of Candidate Before Primary. – If a candidate for nomination in a primary dies or becomes disqualified before the primary but after the ballots have been printed, the State Board of Elections shall determine whether or not there is time to reprint the ballots. If the Board determines that there is not enough time to reprint the ballots, the deceased or disqualified candidate's name shall remain on the ballots. If that candidate receives enough votes for nomination, such votes shall be disregarded and the candidate receiving the next highest number of votes below the number necessary for nomination shall be declared nominated. If the death or disqualification of the candidate leaves only two candidates for each office to be filled, the nonpartisan primary shall not be held and all candidates shall be declared nominees.

(b) ~~Death or Other Disqualification of Candidate;~~ Earlier Non-Primary Vacancies; Reopening Filing. – If there is no primary because only one or two candidates have filed for a single office, or the number of candidates filed for a group of offices does not exceed twice the number of positions to be filled, or if a primary has occurred and eliminated candidates, and thereafter a remaining candidate dies or otherwise becomes disqualified before the election and before the ballots are printed, the State Board of Elections shall, upon notification of the death or other disqualification, immediately reopen the filing period for an additional five days during which time additional candidates shall be permitted to file for election. If the ballots have been printed at the time the State Board of Elections receives notice of the candidate's death or other disqualification, the Board shall determine whether there will be sufficient time to reprint them before the election if the filing period is reopened for three days. If the Board determines that there will be sufficient time to reprint the ballots, it shall reopen the filing period for three days to allow other candidates to file for election, and ~~such~~ that election shall be conducted ~~on the plurality basis.~~ as provided in G.S. 163-329(b1).

(c) ~~Vacancy Caused by Nominated Candidate;~~ Later Vacancies; Ballots Not Reprinted. – If the ballots have been printed at the time the State Board of Elections receives notice of a candidate's ~~death,~~ death or other disqualification, ~~or resignation,~~ and if the Board determines that there is not enough time to reprint the ballots before the election if the filing period is reopened for three days, then regardless of the number of candidates remaining for the office or group of offices, the ballots shall not be reprinted and the name of the vacated candidate shall remain on the ballots. If a vacated candidate should poll the highest number of votes in the election for a single office or enough votes to be elected to one of a group of offices, the State Board of Elections shall declare the office vacant and it shall be filled in the manner provided by law.

(d) No Withdrawal Permitted of Living, Qualified Candidate After Close of Filing. – After the close of the candidate filing period, a candidate who has filed a notice of candidacy for the office, who has not withdrawn notice before the close of filing as permitted by G.S. 163-323(b), who remains alive, and has not become disqualified for the office may not withdraw his or her candidacy. That candidate's name shall remain on the ballot, any votes cast for the candidacy shall be counted in primary or election, and if the candidate wins, the candidate may fail to qualify by refusing to take the oath of office.

(e) Death, Disqualification, or Failure to Qualify After Election. – If a person elected to the office of justice of the Supreme Court, judge of the Court of Appeals, or superior or district court judge dies or becomes disqualified on or after election day and before he has qualified by taking the oath of office, or fails to qualify by refusing to take the oath of office, the office shall be deemed vacant and shall be filled as provided by law."

**SECTION 10.** Article 22E of Chapter 163 of the General Statutes reads as rewritten:

"**§ 163-278.64A. Special participation provisions for candidates in vacancy elections.**

(a) Participation Provisions Modified. – Candidates involved in elections described in G.S. 163-329 may participate in the Fund subject to the provisions of G.S. 163-278.64 as modified by this section. The Board shall adapt other provisions of this Article, including G.S. 163-278.67, to those elections.

(b) Qualifying. – The State Board of Elections shall designate a special qualifying period of no less than four weeks for these candidates, beginning at the close of the notice-of-candidacy filing period. To receive certification, a participating candidate shall raise at least 225 qualifying contributions, totaling at least 20 times the amount of the filing fee for the office, for a four-week qualifying period. If the State Board of Elections sets a longer qualifying period, then for each additional week that the qualifying period extends beyond four weeks, the minimum number of qualifying contributions required for certification shall increase by 25, and the minimum amount of the qualifying contributions shall increase by two times the filing fee. The minimum qualifying contributions shall not exceed the limit set by G.S. 163-278.64(b).

(c) Allocations. – Certified candidates shall receive one percent (1%) of the funding to which they would be eligible under G.S. 163-278.65 times the number of calendar days between the end of the special qualifying period and the day of the general election. That amount shall not exceed one hundred percent (100%) of the funding to which they would be eligible under G.S. 163-278.65."

**SECTION 11.** G.S. 163-278.65(c) reads as rewritten:

"(c) Method of Fund Distribution. – The Board, in consultation with the State Treasurer and the State Controller, shall develop a rapid, reliable method of conveying funds to certified candidates. In all cases, the Board shall distribute funds to certified candidates in a manner that is expeditious, ensures accountability, and safeguards the integrity of the Fund. If the money in the Fund is insufficient to fully fund all certified candidates, then the available money shall be distributed proportionally, according to each candidate's eligible ~~funding.~~ funding, and the candidate may raise additional money in the same manner as a noncertified candidate for the same office up to the unfunded amount of the candidate's eligible funding."

**SECTION 12.** G.S. 163-278.66(a) reads as rewritten:

"(a) Reporting by Noncertified Candidates and Independent Expenditure Entities. – Any noncertified candidate with a certified opponent shall report total income, expenses, and obligations to the Board by facsimile machine or electronically within 24 hours after the total amount of campaign expenditures or obligations made, or funds raised or borrowed, exceeds eighty percent (80%) of the trigger for rescue funds as defined in G.S. 163-278.62(18). Any entity making independent expenditures ~~in excess of three thousand dollars ($3,000)~~ in support of or opposition to a certified candidate or in support of a candidate opposing a certified candidate shall report the total funds received, spent, or obligated for those expenditures to the Board by facsimile machine or electronically within 24 hours after the total amount of expenditures or obligations made, or funds raised or borrowed, for the purpose of making the independent expenditures, exceeds ~~fifty percent (50%) of the trigger for rescue funds.~~ five thousand dollars ($5,000). After this 24-hour filing, the noncertified candidate or independent expenditure entity shall comply with an expedited reporting schedule by filing additional reports after receiving each additional amount in excess of one thousand dollars ($1,000) or after making or obligating to make each additional expenditure(s) in excess of one thousand dollars ($1,000). The schedule and forms for reports required by this subsection shall be made according to procedures developed by the Board."

**SECTION 13.** G.S. 163-278.68(b) reads as rewritten:

"(b) Advisory Council for the Public Campaign Fund. – There is established under the Board the Advisory Council for the Public Campaign Fund to advise the Board on the rules, procedures, and opinions it adopts for the enforcement and administration of

this Article and on the funding needs and operation of the Public Campaign Fund. The Advisory Council shall consist of five members to be appointed as follows:

    (1) The Governor shall name two members from a list of individuals nominated by the State Chair of the political party with which the greatest number of registered voters is affiliated. The State Chair of that party shall submit to the Governor the names of five nominees.

    (2) The Governor shall name two members from a list of individuals nominated by the State Chair of the political party with which the second greatest number of registered voters is affiliated. The State Chair of that party shall submit to the Governor the names of five nominees.

    (3) The Board shall name one member by unanimous vote of all members of the Board. If the Board cannot reach unanimity on the appointment of that member, the Advisory Council shall consist of the remaining members.

No individual shall be eligible to be a member of the Advisory Council who would be ineligible to serve on a county board of elections in accordance with G.S. 163-30. The initial members shall be appointed by December 1, 2002. Of the initial appointees, two are appointed for one-year terms, two are appointed for two-year terms, and one is appointed for a three-year term according to random lot. Thereafter, appointees are appointed to serve four-year terms. An individual may not serve more than two full terms. terms, except that regardless of the time of appointment each term shall end on December 31. A member shall continue on the Advisory Council beyond the expired term until a successor is appointed. The appointed members receive the legislative per diem pursuant to G.S. 120-3.1. One of the Advisory Council members shall be elected by the members as Chair. A vacancy during an unexpired term shall be filled in the same manner as the regular appointment for that term, but a vacancy appointment is only for the unexpired portion of the term."

**SECTION 14.** G.S. 163-278.69(c) reads as rewritten:

"(c) Disclaimer. – The Judicial Voter Guide shall contain the following statement: 'The above statementsStatements by candidates do not express or reflect the opinions of the State Board of Elections.'"

**SECTION 14.1.** G.S. 163-278.63(a) reads as rewritten:

"(a) Establishment of Fund. – The North Carolina Public Campaign Fund is established to finance the election campaigns of certified candidates for office and to pay administrative and enforcement costs of the Board related to this Article. The Fund is a special, dedicated, nonlapsing, nonreverting fund. All expenses of administering this Article, including production and distribution of the Voter Guide required by G.S. 163-278.69 and personnel and other costs incurred by the Board, including public education about the Fund, shall be paid from the Fund and not from the General Fund. Any interest generated by the Fund is credited to the Fund. The Board shall administer the Fund.

**SECTION 15.** G.S. 163-278.13(e) reads as rewritten:

"(e) This Except as provided in subsections (e2) and (e3) of this section, this section shall not apply to any national, State, district or county executive committee of any political party. For the purposes of this section only, the term "political party" means only those political parties officially recognized under G.S. 163-96."

**SECTION 16.** G.S. 163-278.13(e2) reads as rewritten:

"(e2) In order to make meaningful the provisions of Article 22D of this Chapter, the following provisions shall apply with respect to candidates for justice of the Supreme Court and judge of the Court of Appeals:

    (1) No candidate shall accept, and no contributor shall make to that candidate, a contribution in any election exceeding one thousand dollars ($1,000) except as provided for elsewhere in this subsection.

> (2) A candidate may accept, and a family contributor may make to that candidate, a contribution not exceeding two thousand dollars ($2,000) in an election if the contributor is that candidate's parent, child, brother, or sister.
> (3) No candidate shall accept, and no contributor shall make to that candidate, a contribution during the period beginning 21 days before the day of the general election and ending the day after the general ~~election.~~ election if that contribution causes the candidate to exceed the "trigger for rescue funds" defined in G.S. 163-278.62(18). This subdivision applies with respect to a candidate opposed in the general election by a certified candidate as defined in Article 22D of this Chapter who has not received the maximum rescue funds available under G.S. 163-278.67. The recipient of a contribution that apparently violates this subdivision has three days to return the contribution or file a detailed statement with the State Board of Elections explaining why the contribution does not violate this subdivision.

As used in this subsection, "candidate" is also a political committee authorized by the candidate for that candidate's election. Nothing in this subsection shall prohibit a candidate or the spouse of that candidate from making a contribution or loan secured entirely by that individual's assets to that candidate's own campaign."

**SECTION 17.** G.S. 163-278.13 is amended by adding a new subsection to read:

"(e3) Notwithstanding the provisions of subsections (a) and (b) of this section, no candidate for superior court judge or district court judge shall accept, and no contributor shall make to that candidate, a contribution in any election exceeding one thousand dollars ($1,000), except as provided in subsection (c) of this section. As used in this subsection, "candidate" is also a political committee authorized by the candidate for that candidate's election. Nothing in this subsection shall prohibit a candidate or the spouse of that candidate from making a contribution or loan secured entirely by that individual's assets to that candidate's own campaign."

**SECTION 18.** G.S. 105-159.2 reads as rewritten:

"**§ 105-159.2. Designation of tax to North Carolina Public Campaign ~~Financing~~ Fund.**

(a) Allocation to the North Carolina Public Campaign Fund. – To ensure the financial viability of the North Carolina Public Campaign Fund established in Article 22D of Chapter 163 of the General Statutes, the Department must allocate to that Fund three dollars ($3.00) from the income taxes paid each year by each individual with an income tax liability of at least that amount, if the individual agrees. A taxpayer must be given the opportunity to indicate an agreement or objection to that allocation in the manner described in subsection (b) of this section. In the case of a married couple filing a joint return, each individual must have the option of agreeing or objecting to the allocation. The amounts allocated under this subsection to the Fund must be credited to it on a ~~quarterly~~ monthly basis.

(b) Returns. – Individual income tax returns must give an individual an opportunity to agree to the allocation of three dollars ($3.00) of the individual's tax liability to the North Carolina Public Campaign Fund. The Department must make it clear to the taxpayer that the dollars will support a nonpartisan court system, that the dollars will go to the Fund if the taxpayer marks an agreement, and that allocation of the dollars neither increases nor decreases the individual's tax liability. The following statement ~~satisfies the intent of~~ must be used to meet this requirement: ~~"Three dollars ($3.00) will go to the North Carolina Public Campaign Fund to support a nonpartisan court system, if you agree. Your tax remains the same whether or not you agree."~~ 'Mark 'Yes' if you want to designate $3 of taxes to this special Fund for voter education materials and for candidates who accept spending limits. Marking 'Yes' does not change

your tax or refund.' The Department must consult with the State Board of Elections to ensure that the information given to taxpayers complies with the intent of this section.

The Department must inform the entities it approves to reproduce the return ~~of~~ that they must comply with the requirements of this section and that a return may not reflect an agreement or objection unless the individual completing the return decided to agree or object after being presented with the statement required by subsection (b) of this section and, as available background information or instructions, the information required by subsection (c) of this section. No software package used in preparing North Carolina income tax returns may default to an agreement or objection. A paid preparer of tax returns may not mark an agreement or objection for a taxpayer without the taxpayer's consent.

(c) Instructions. – The instruction for individual income tax returns must include the following explanatory statement: 'The ~~North Carolina~~ N.C. Public Campaign Fund provides an alternative source of campaign money to ~~nonpartisan~~ qualified candidates ~~for the North Carolina Supreme Court and Court of Appeals~~ who ~~voluntarily~~ accept strict campaign spending and fund-raising limits. The Fund also helps finance a Voter Guide with educational materials about voter registration, the role of the appellate courts, and the candidates seeking election as appellate judges in North Carolina. Three dollars ~~($3.00)~~ from the taxes you pay will go to the Fund if you mark an agreement. Regardless of what choice you make, your tax will not increase, nor will any refund ~~you are entitled to~~ be reduced.'"

**SECTION 19.** Sections 2 through 5 of this act are effective January 1, 2007, and apply to all primaries and elections conducted on or after that date. Sections 8 and 9 of this act are effective when this act becomes law and apply to vacancies occurring on or after that date. Section 17 of this act and the portion of Section 15 of this act that affects G.S. 163-278.13(e3) become effective January 1, 2007, and apply to contributions made or accepted on or after that date. Section 18 of this act becomes effective for taxable years beginning on or after January 1, 2006. The remainder of this act is effective when it becomes law.

In the General Assembly read three times and ratified this the 27th day of July, 2006.


s/ Beverly E. Perdue
    President of the Senate


s/ James B. Black
    Speaker of the House of Representatives


s/ Michael F. Easley
    Governor


Approved 11:57 a.m. this 3rd day of August, 2006